## IN EQUITY.—MAY, 1856.

### BENJAMIN F. HARDY *vs.* ELI S. RUGGLES *et als.*

The mortgage contained a clause allowing the mortgagors to retain the possession of the mortgaged stock in trade, until default, and to continue their business by selling any part of the stock, and replacing the same by other stock purchased in lieu thereof. Held: that a transfer to one of their creditors, on account, of all the stock in their place of business, could not be upheld under the above clause.

Third parties must refrain from interfering directly with the mortgagee's security, by taking assignments of the mortgaged stock in satisfaction of their claims.

The *onus* was thrown upon parties purchasing the entire stock, to show what portion of it was not covered by complainant's mortgage.

JUDGE ROBERTSON delivered the following decision, viz:

On the 21st of March, I gave an interlocutory judgment in this cause, overruling the motion of defendant's counsel to dismiss the bill. At the conclusion of that judgment I intimated my opinion that it was necessary for the complainant to rebut the presumption of fraud in the original transaction, arising from the continued possession of the property by the mortgagors, with power to sell any part therof in carrying on their business as druggists; to bring home notice of the mortgage and schedule of property to the defendants Field and Goodalé, and to show that they are not *bona fide* purchasers for a valuable consideration.

Upon exceptions taken by complainant's counsel to a part of my decision, it has been held by the full court that, it does not appear that the schedule, or bill of items, referred to in the mortgage, was made a part of the instrument, so as to render it necessary to record such schedule along with the mortgage. This ruling of the court settles definitely, and in the affirmative, the question as to whether or not the due registration of the mortgage alone must be regarded, in this cause, as sufficient notice to third parties.

While sustaining the exception to my decision on that point, the judgment of the court fully supports the opinion I expressed that the mortgage cannot affect any incoming stock, at least so far as it consists of goods not purchased and paid for with the proceeds of original stock. As to whether or not such a mortgage would be held to cover incoming stock, even if it was purchased with the proceeds of original stock, is still an open question, and one which, as yet, it does not appear necessary to decide in the present case, although it may be necessary to do so before the cause is finally disposed of.

As to the *bona fides* of the original transaction, between the complainant and the mortgagors, Ruggles and Thurston, I see no reason to believe, from the evidence before me, that that transaction was not a fair one, or that the mortgage was made with any intention whatever of defrauding third parties.

It being settled then, that the original transaction between the complainant and the mortgagors, was fair and honest; that the mortgage is good, as to all the stock in trade of which the mortgagors were possessed at the time of its execution, and that the due registration of the mortgage is sufficient to charge the defendants, Field and Goodale, with notice of the incumbrance, let us next inquire whether or not the conveyances made to these parties were an infringement of the complainant's rights under the mortgage.

First, as to the conveyance made to Mr. Field. It appears that he, as the attorney in fact of Wilson, Fairbanks & Co. of Boston, on the 13th of February last, purchased or took an assignment of all the stock in trade of Ruggles & Co. in their store on Fort street, for the sum of $1000, for which amount Mr. Field gave Ruggles & Co. credit in their account with his principals. Ruggles & Co. at the same time, and by the same bill of sale, assigned to Mr. Field the unexpired term of their store lease, and delivered to him possession of the store together with the goods. It is contended by Mr. Field's counsel, that the purchase made by his client from the mortgagors, is perfectly in accordance with the terms of the mortgage, by which the mortgagors were permitted to sell any part of the mortgaged goods, and that Mr Field is a *bona fide* purchaser for a valuable consideration. The language of the mortgage in regard to the mortgagor's continued possession and power to sell is as follows:

"And it is further agreed that until breach of this deed by a failure to pay some one of the notes as aforesaid, the parties of the first part shall be permitted to remain in possession of the stock in trade, and continue their business by selling any part thereof and replacing the same by other stock purchased in lieu thereof "

Now, I am clearly of opinion, that the assignment made by the mortgagors to Mr. Field, so far as it includes any portion of the goods covered by the mortgage, is a transaction of a character altogether at variance with a fair understanding of the meaning and intent of the parties to the mortgage, as it is to be gathered from the clause above quoted. Can it be fairly contended that the transfer by Ruggles & Co., of all the stock in their place of business on Fort street, together with the occupancy of the store itself, was a transaction consistent with the plain intention of the parties to the mortgage? Was the sale or assignment thus made to Field, made with a view to the continuance of the mortgagor's business? Was taking credit for the amount of the consideration, on account of the mortgagor's indebtedness to Wilson, Fairbanks & Co., such a disposition of the proceeds, as was contemplated by the parties to the mortgage at the time of its execution? It seems to me that the terms and circumstances of the assignment to Field, are such as to place these questions beyond the reach of argument. So far from that assignment being consistent with the continuance of the mortgagors' business, its immediate result was *ipso facto*, to put an end to that business. So far from being consistent with the rights of the mortgagee, the effect of the assignment would be, to defeat his lien not only upon so much of the stock as was transferred to Field, but also upon the proceeds thereof. I am therefore of opinion that, so far as it included any goods covered by the complainant's mortgage, that conveyance ought to be declared void.

Let us next consider the assignment of the remaining part of their stock, by the mortgagors to Mr. Goodale. It appears that he is a creditor of Ruggles & Co. to an amount exceeding $2200, the origin of his claim being the indorsement of a note for Ruggles & Co., about the time that they purchased the original stock of drugs from the complainant, which note, as appears by the evidence, was discounted by Mr. B. F. Angel, and the proceeds paid over to the complainant by Ruggles & Co., on account of that purchase. When

that note fell due, Ruggles & Co. were unable to pay it, and they therefore renewed it by making a new note including the interest, which was also endorsed by Mr. Goodale. When the second note became due, Ruggles & Co. declared their inability to meet it, and the consequence was that Mr. Goodale had to pay it, which he did, at the Bank of Page, Bacon & Co.

On the same day that Ruggles & Co. assigned all the stock in trade at their store on Fort street to B. W. Field, they transferred all their remaining stock, situated in a wooden shed on the "French premises," near their original place of business, by bill of sale, to Warren Goodale, for the consideration named therein of $1600, for which amount they were to have credit, as an offset to the claim of Mr. Goodale upon the promissory note. Although it is probable that such was the case still there is no positive proof that Mr. Goodale was cognizant of the transfer of the other part of the stock to Mr. Field, or that he was aware of the intention of Ruggles & Co. to discontinue their business. In his answer, Mr. Goodale denies having had at that time any knowledge of the complainant's mortgage, but that of course can avail him nothing, as the mortgage was duly recorded. Is there any thing then in the assignment to Mr. Goodale, which shows it to have been made in contravention of the complainant's rights, under his mortgage? Recurring again to the clause of the mortgage already cited, I feel constrained to say, that I cannot see how it is possible to reconcile this transaction with a due regard to the rights of the mortgagee, if the goods transferred to Goodale were original stock and covered by the mortgage. True, it may be contended, that this assignment was not on the face of it inconsistent with the continuance of the mortgagor's business, and in that respect is unlike the assignment to Mr. Field. But, how can the agreement between Goodale and the mortgagors, that the consideration of $1600 should be allowed in reduction of his claim against them be reconciled with the rights of the mortgagee? Is not the direct and immediate result of such an arrangement, if upheld, to lessen the security of the mortgagee, by placing beyond the operation of his mortgage, not merely the goods, but their proceeds also? Is it not diverting the fund arising from the sale of the goods, to a purpose entirely foreign to that which was agreed upon by the parties to the mortgage, without the concurrence of one of those parties, and to the detriment of his interest?

But, it is contended by Mr. Goodale's counsel, that the circumstances under which his claim against the mortgagors arose, are such as ought to place him in the eye of a court of equity, in a better position than even the mortgagee. In other words, that of the two, Mr. Goodale has the superior equity. To this it is replied by complainant's counsel that, although the endorsement of the first note by Mr. Goodale, preceded the date of complainant's mortgage by two months, yet, the indebtedness of Ruggles & Co. to Mr. Goodale did not accrue until that note became payable, which was eight months subsequent to the time the mortgage was given. But, supposing that the debt of Ruggles & Co. to Goodale had accrued prior to the date of Hardy's mortgage, and Goodale failed to have his debt secured either by a mortgage or a judgment, how can he now be said to possess a superior equity to Hardy? The fact that the money raised by

Ruggles & Co , by discounting the note indorsed by Goodale, was paid over to Hardy in part payment of the stock purchased of him by Ruggles & Co., makes no difference in Goodale's favor. The mortgage given to Hardy was to secure the balance still due to him, after he had received that amount in part payment. Had the money raised through Goodale's indorsement, been passed over to Hardy in part payment of the balance secured by mortgage, there might in that case be some ground to argue, that Goodale, by the assignment, had only obtained possession of a part of the goods, upon which he had extinguished the complainant's lien. In order to illustrate my opinion of the position taken by Mr. Goodale's counsel, I will suppose that Ruggles & Co. had purchased of Dr. Hardy, one hundred acres of land for $4000, payable half in cash, and half in twelve months, and that, in order to raise the cash part of the price, they borrowed of Mr. Goodale $2000, upon their personal credit, which they passed over to Hardy, giving him at the same time a mortgage on the land, to secure the remaining $2000. Supposing in that case, that at the end of ten months, Ruggles & Co. had made an absolute conveyance of fifty acres of the land to Goodale, in payment of their debt to him of $2000, Hardy's mortgage having been duly recorded, could it be successfully contended that such a conveyance would, or ought in justice to be allowed to defeat the lien of the mortgagee ? If, in the case before me, Mr. Goodale was content to rely upon the bare personal credit of Ruggles & Co., while Dr. Hardy secured himself by obtaining a mortgage upon their stock of goods, surely the latter must be allowed to reap the benefit of his superior prudence. In the course of the argument of this cause, great stress has been laid by counsel for defendants upon the stipulation in the mortgage which allowed the mortgagors to carry on their business, by selling any part of the mortgaged goods. But, the fact must not be overlooked, that this permission to sell was allowed to the mortgagors, for the very purpose of enabling them to carry on their business, for the mutual benefit of both parties, and on the express condition that they would replace old stock with new. Whether or not such a condition would avail as against an attaching creditor, it was, and might well be deemed valid by the parties to the mortgage. It has been contended that if the court shou d uphold this mortgage as against the conveyances to Field and Goodale, the mortgagee might with equal propriety ask us to declare void, every sale made by Ruggles & Co , since the date of the mortgage. This appears to me an unsound argument, because it is equivalent to saying that the mortgagors could not make a valid sale at all, which is clearly incorrect. Every sale made by the mortgagors in accordance with the terms of the mortgage is good. Parties who purchased portions of the mortgaged goods from Ruggles & Co., in the ordinary course of their business, and paid for such goods, were not obliged to see that Ruggles & Co. applied the proceeds in strict accordance with the terms of the mortgage, because, to that extent, Hardy trusted to the personal good faith of the mortgagors; but, it was incumbent on third parties at least to refrain from interfering directly with the mortgagee's security, by taking assignments of the stock in satisfaction of their unsecured claims. The rule would seem to apply here with force, "that particular persons, in contracts and other acts, shall not

only transact *bona fide* between themselves but shall not transact *mala fide* in respect to other persons, who stand in such a relation to either, as to be affected by the contract or the consequences of it." Story's Eq. Jur. Vol. 1, Sec. 333. In order to uphold the conveyance made to Messrs. Field and Goodale, it is necessary that those conveyances should appear, not only to have been made for a valuable consideration, but also in accordance with the terms of the mortgage, under which it is claimed that Ruggles & Co. had a right to dispose of the goods. If either of these two requisites are wanting, the conveyances cannot be upheld. I have already stated my opinion that neither of them were consistent with the terms of the mortgage, if they included goods covered by it, and ought therefore, to that extent, to be set aside. It is unnecessary to decide upon the question whether or not Messrs. Field and Goodale were purchasers for a valuable consideration.

The next question is, if the conveyances to Messrs. Field and Goodale are to be held void only so far as they include goods covered by the mortgage, how shall it be ascertained what portion of the goods stand in that category, and what portion do not ? There is evidence already to show that the goods transferred to Field consist, to a considerable extent, of a part of the same goods for which Ruggles & Co. are said to be indebted to his principals, Wilson, Fairbanks & Co. In the case of Goodale, on the contrary, I understand that the goods conveyed to him are chiefly original stock. But the evidence now on record does not show precisely what part of the goods conveyed to either, are of the original stock, and what part are new. An opportunity to adduce evidence for that purpose, must be afforded before a final decree is made in the cause. The question is upon whom does the *onus* lie of producing such evidence ? Were this the familiar case of a party who wilfully or negligently, suffered his goods to remain in the possession of, and mixed up with the goods of another, till they were attached by the sheriff on legal process, the question would admit of but one answer, for, in that case, the party claiming must identify his goods if he would save them. Or, if in this case, the goods had been so attached, the mortgagee would be required to identify the particular goods upon which he claims to have a lien, being allowed a fair opportunity so to do. But, the circumstances of this case are otherwise. The goods upon which Hardy claims to have a lien, were left in the possession and under the control of the mortgagors, to be dealt with in good faith pursuant to an agreement made for the mutual benefit of the parties, of which agreement Messrs. Field and Goodale had constructive notice. In opposition to that agreement the mortgagors have, with the assistance of Messrs. Field and Goodale, divested themselves of the possession of the goods, in a manner calculated to prejudice and defeat the rights of the mortgagee, without his consent. The conveyances made to Messrs. Field and Goodale can be upheld only so far as to bind goods not covered by the mortgage, and justice between the parties would seem to require that they, and not the mortgagee, should produce the evidence necessary to sustain those conveyances to the extent indicated. It seems to me that to hold otherwise, would be to place the mortgagee at a disadvantage, not through any negligence or fault on his part, but through the wrong-

ful act of the other parties. It would be peculiarly hard, under the
circumstances of this case, to require the mortgagee to produce the
evidence necessary to sustain a conveyance made in contravention of
his rights. The mortgagors are, probably, the only parties who can
distinguish what goods are of the original stock, and what are not.
Messrs. Field and Goodale may fairly call upon them to produce all
the evidence in their power, in support of the conveyances they have
made. A reasonable time will be allowed for that purpose, and should
Messrs. Field and Goodale fail to produce evidence, or decline to do
so, the court will then take such further action in the premises as may
seem just and right.

Mr. Ducorron and Mr Griswold for the complainant.

Mr. Bates for B. W. Field.

Mr. Montgomery for W. Goodale.

Mr. Harris for Ruggles & Thurston.